IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA W. STRAIGHT,

                Plaintiff,

v.                                            OPINION and ORDER

ANDREW SAUL,                                  20-cv-346-jdp
Commissioner of the Social Security Administration,

                Defendant.

---

      Plaintiff Joshua Straight seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Straight not disabled within the meaning of the Social Security Act. Straight contends that the administrative law judge erred by: (1) failing to adequately assess Straight's subjective symptoms; (2) failing to include Straight's mental limitations related to concentration, persistence, and pace into the residual functional capacity assessment and hypothetical question to the vocational expert; (3) failing to give adequate weight to the opinions of the state agency doctors; and (4) failing to ensure the reliability of the job numbers provided by the vocational expert.

      The court is not persuaded that the ALJ erred, so it will affirm the commissioner's decision.

ANALYSIS

      Straight seeks supplemental security income for disability beginning in September 2017, when he was 28 years old. R. 14.[1] In a May 2019 decision, an ALJ found that Straight

---

[1] Record cites are to the administrative record, located at Dkt. 19.

was not disabled. R. 14–23. The ALJ found that Straight suffered from several severe impairments, including low body mass index, asthma, knee pain, depressive disorder, substance addiction disorder, and learning disorder, but that Straight had the residual functional capacity to perform a limited range of simple, routine, light work, with additional environmental, postural, and mental restrictions. R. 18. Relying on the testimony of a vocational expert, the ALJ found that Straight could still perform work in the national economy despite his impairments. R. 23. The Appeals Council denied Straight's appeal, and Straight filed this lawsuit.

The case is now before this court to determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

**A. Subjective symptoms**

The medical records show that Straight reported to his medical care providers that he suffers from PTSD due to past sexual abuse, that he has a learning disability, that he has difficulty concentrating, and that he frequently feels depressed and anxious. Straight testified at the administrative hearing that he has PTSD and bipolar disorder, and that his conditions cause him significant stress and anxiety. R. 47. He testified that when he is he stressed, he "f[lies] off the handle easily," and that when he is depressed, he isolates himself. *Id.* Straight also testified that he bathes himself only once a month and changes his clothes every three or

four days. R. 63. The ALJ acknowledged Straight's subjective symptoms, but concluded that Straight's testimony about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical and other evidence. Straight argues that the ALJ's assessment of his subjective symptoms is flawed because the ALJ distorted and minimized evidence of Straight's impairments and cherry-picked the record for statements suggesting that Straight's symptoms had improved.

Straight's arguments are not persuasive. The ALJ did not disregard the severity of Straight's mental limitations or his subjective complaints. The ALJ discussed Straight's subjective complaints regarding depression, anxiety, and learning impairments, as well as objective examinations and treatment decisions that acknowledged Straight's mental health symptoms. R. 18–20. The ALJ found that Straight's depression, substance abuse disorder, and learning disorder are severe impairments, and that the impairments supported restricting Straight to simple, unskilled work with additional mental restrictions. But for several reasons, the ALJ did not think that Straight's mental impairments were as sever as reported or that they precluded him from working.

The ALJ explained that Straight's mental impairments had been treated conservatively, primarily with counseling, as opposed to inpatient services or medication. R. 20. Despite Straights complaints of significant mental distress, his examinations showed that he was rarely in acute distress. *Id.* In addition, Straight frequently appeared at his appointments on time, alert, oriented, cooperative, with a normal mood and affect, and with intact recent memory, remote memory, cognition, and thought process. R. 17, 20.

The ALJ also discussed Straight's daily activities. She noted that Straight could shop at stores, attend church, take care of a dog, play video games, use a computer, act as a disc jockey,

3

and work on cars. R. 17, 20. For these reasons, the ALJ partially credited Straight's statements regarding his subjective symptoms, but she concluded that the record did not support Straight's allegations of disabling mental impairments.

Straight takes issue with the ALJ's discussion, arguing that individuals who suffer from depression and PTSD can have good days and bad days, with symptoms that wax and wane. This might be true, but the ALJ was entitled to consider Straight's treatment history, his presentation at his appointments, and his daily activities in assessing Straight's statements regarding the extent of his symptoms and functioning. *See* 20 C.F.R. §416.929(c)(3); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). Straight has failed to show any reversible error in the ALJ's assessment of Straight's subjective symptoms.

**B. Concentration, persistence, and pace**

The ALJ concluded that Straight had moderate difficulties in concentration, persistence, and pace, and he gave weight to the opinions of state psychological consultants Drs. Lefevre and Harris, who opined that Straight would have difficulties in those areas. Straight contends that the ALJ's residual functional capacity assessment and hypothetical question failed to incorporate these limitations.

Straight's argument fails. The residual functional capacity assessment and hypothetical question must account for all of a claimant's demonstrated psychological symptoms, including limitations related to concentration, persistence, and pace. *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019). But the ALJ is not required to use specific language or to impose restrictions that are not supported by the record evidence. *Jozefyk v. Berryhill*, 923 F.3d 492 (7th

4

Cir. 2019) (per curiam). In this instance, the ALJ's residual functional capacity assessment limits Straight to:

- simple, routine, repetitive tasks;
- a low-stress environment;
- few, if any, simple work-related decisions;
- few, if any, routine changes in the work setting;
- no fast-paced environment;
- no interaction with the public;
- occasional superficial interaction with coworkers; and
- three supervisor checks per day.

R. 18. The ALJ's explained how the limitations were supported by evidence in the record, including Straight's subjective symptoms, medical treatment records, and the opinions of the psychological consultants who found that Straight retained the ability to concentrate, persist, and maintain the pace necessary to perform unskilled, simple work. R. 84, 97. Straight has not shown that the ALJ erred by failing to include additional limitations in the residual functional capacity assessment.

Straight also argues that the ALJ erred by including the "accommodation" of "three supervisor checks per day" in the residual functional capacity assessment. Straight argues that the vocational expert testified at the hearing that such supervisor checks would amount to a job coaching accommodation, and that an "accommodated job" does not constitute competitive employment under the Social Security Act. But the vocational expert did not opine that the three supervisor checks discussed by the ALJ would amount to job coaching. The expert testified that examples of accommodations would be an employee's need for a supervisor to

5

"repeat the same job on a daily basis" or an employee's need for "daily reminders in terms of repeating the tasks every single day at least once or twice a day." R. 71–72. The ALJ did not include such limitations in the residual functional capacity. R. 18. And the vocational expert testified that an individual needing "three supervisor checks per day," as stated in the residual functional capacity, would not be precluded from the jobs the expert identified. R. 23, 69–72.

Straight has not shown that the ALJ's mental residual functional capacity assessment was erroneous.

## C. Psychological consultant opinions

Straight argues that the ALJ failed to give sufficient weight to the opinions provided by state agency psychological consultants Esther Lefevre and Therese Harris. The ALJ mostly endorsed Lefevre and Harris in giving them "some weight," but Straight contends that the ALJ should have given more weight to their opinions that Straight would have difficulty with speed or pressured performance.

Both Lefevre and Harris opined that Straight would have difficulty with speed and pressured performance, but they both also concluded that Straight's mental impairments were not disabling. R. 80–84, 93–98. Lefevre opined that Straight would have difficulty following detailed instructions and performing skilled work, but that Straight would have no significant difficulty performing various aspects of unskilled work, including understanding or remembering simple instructions; maintaining regular attendance or working at a reasonable pace; responding appropriately to supervisors or maintaining socially appropriate behavior; and corresponding to routine changes. R. 82–84. Harris's assessment was essentially the same as Lefevre's, but Harris added that Straight could maintain focus, pace, and persistence for simple tasks for two-hour periods, over an eight-hour workday, and within a normal 40-hour work

6

schedule. R. 95–98. The ALJ gave Lefevre's and Harris's opinions "some weight," stating that the opinions were consistent with the record showing problems with memory, concentration, anxiety, and social isolation. R. 21.

Straight's real argument seems to be that the ALJ's residual functional capacity assessment permitting end-of-day quotas is inconsistent with Lefevre's and Harris's opinions. But neither Lefevre nor Harris opined that Straight would be unable to meet daily quotas. They both stated that Straight could "work at a reasonable pace required in unskilled work." R. 80–84, 94–98. The ALJ's residual functional capacity assessment accounted for these opinions by limiting Straight to "simple, routine, repetitive tasks in a low stress environment" and not fast-paced environment. R. 18. Straight has not shown that the ALJ failed to account appropriately for the medical consultant opinions in the residual functional capacity assessment.

### D. Testimony of vocational expert

Straight contends that the ALJ erred by failing to address apparent conflicts in the vocational expert's testimony. The vocational expert testified that an individual with Straight's residual functional capacity could perform the jobs of: (1) cleaner housekeeping, with approximately 133,108 jobs in the national economy; (2) assembler, with approximately 34,320 jobs in the national economy; and (3) routing clerk, with approximately 40,867 jobs in the national economy. R. 23, 70–71. Straight argues that these jobs could not, in fact, be performed by an individual with his residual functional capacity assessment.

If there appears to be an "obvious" conflict between the testimony of the vocational expert and the information provided in the Dictionary of Occupational Titles, the ALJ must ask the expert to reconcile the apparent conflict, even if the claimant does not object during the hearing. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citing SSR 00-4p, at 5). A

7

conflict is apparent if it is "so obvious that the ALJ should have picked up on [it] without any assistance." *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011). In this case, the ALJ asked the vocational expert about conflicts between her testimony and the DOT, and the expert denied that there were any conflicts. R. 68. Straight's counsel did not point out any conflicts at the hearing. However, Straight now contends that remand is required because the ALJ did not resolve obvious conflicts between the jobs identified by the vocational expert and Straight's residual functional capacity assessment.

Straight makes three arguments against the vocational expert's evidence, but the court is not persuaded that the ALJ erred. First, Straight argues that he could not perform the "assembler" and "routing clerk" jobs based on descriptions of those jobs contained in the Occupational Outlook Handbook. That handbook is not the same as the DOT, and it was not used in this case. Straight has identified no legal authority requiring the ALJ to resolve conflicts between the expert's testimony and information in the Occupational Outlook Handbook.

Second, Straight argues that he could not work at a "set pace" or on a conveyer belt, as might be required for the assembler and routing clerk jobs according to the DOT. But, as discussed, Straight's residual functional capacity does not preclude him from working at a set pace or on machinery. The ALJ prohibited Straight from working in a fast-paced environment or around hazardous machines, but she did not prohibit Straight from working with moving machinery or at a pace appropriate for simple, unskilled work.

Straight's third argument about the "cleaner housekeeping" job has more traction. The DOT states that cleaner housekeeping may require providing "personal assistance to patrons." Straight's residual functional capacity restricts him from contact with the public, which he says would rule out providing the personal assistance required for the cleaner housekeeping job. The

8

Commissioner argues that the conflict between the vocational expert's testimony and the DOT was not so obvious that the ALJ should have picked up on it without assistance, which is also a fair point, because personal assistance is not a necessary component of all housekeeping jobs. But I need not resolve the question of whether this was an obvious conflict, because a significant number of jobs were available to Straight even if the housekeeping positions were disregarded entirely. The vocational expert estimated that there were approximately 75,000 assembler and routing clerk jobs in the national economy. R. 71. The expert also testified that Straight could perform certain sedentary jobs, of which approximately 16,000 were available. *Id.* Thus, even without the cleaner housekeeping job, there are still a significant number of jobs that someone with Straight's residual functional capacity could perform. *See Collins v. Berryhill*, 743 F. App'x 21, 25–26 (7th Cir. 2018) (ALJ's failure to resolve conflict regarding some of the jobs identified by the expert was harmless error when the expert identified other jobs that were available in significant numbers (55,000) in the economy).

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner, remove the hearing scheduled for March 16, 2021 from the court's calendar, and close this case.

Entered March 15, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge